Filed 3/24/26  P. v. Rivera CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. ROSARIO RIVERA, Defendant and Appellant. | B342234, B342236 Los Angeles County Super. Ct. No. BA130759, BA129027 |

APPEAL from an order of the Superior Court of Los Angeles County, Mildred Escobedo, Judge.  Reversed and remanded with instructions.

Edgar J. Cervantes, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Rosario Rivera sought to vacate two old convictions under section 1473.7 because he had not understood the immigration consequences of his pleas. The trial court denied relief. We reverse and remand for the trial court to enter an order granting Rivera's application under section 1473.7. Undesignated statutory citations are to the Penal Code.

In March 1996, a complaint charged Rivera with corporal injury to a cohabitant and genital penetration by a foreign object with force and violence. The victim in both counts was his partner and the mother of his children, Mercedes Ibarra. At a March 21 hearing, Rivera entered an open plea to the first charge and moved to dismiss the second count. The court advised Rivera that his plea "could" have immigration consequences. The court released Rivera on his own recognizance and set sentencing for a later date.

About three weeks later, Rivera again inflicted corporal injury on Ibarra. On June 3, 1996, the parties agreed to a negotiated disposition in both cases. Rivera would remain in custody until a sentencing hearing on December 12 for both cases. The court again advised Rivera that his plea "could" have immigration consequences. Rivera confirmed that he understood. Rivera then entered a plea of no contest to the new charge of corporal injury on a cohabitant.

On December 12, 1996, the trial court sentenced Rivera to 367 days in county jail and three years of probation for both cases. On July 30, 1999, the court found Rivera had violated the terms of his probation, revoked probation, and sentenced Rivera to concurrent two-year terms in state prison.

In August 2024, Rivera filed a motion to withdraw his pleas in the two cases pursuant to section 1473.7. The

prosecution opposed. After argument, the trial court denied relief in an oral ruling, finding Rivera was not credible in his assertion that he had not understood the immigration consequences of his plea, especially given the court's advisement and Rivera's lengthy rap sheet, and that the motion was untimely.

Rivera filed an appeal in each of his cases. We consolidated the two appeals.

Rivera correctly argues the trial court erred in denying his motion for relief.

Section 1473.7 allows noncitizens who have served their sentences to vacate their convictions if they can establish that their convictions are invalid due to prejudicial error impairing their ability to meaningfully understand, defend against, or knowingly accept the actual or potential immigration consequences of their conviction. (§ 1473.7, subd. (a)(1).) To show prejudicial error, the noncitizen must demonstrate a reasonable probability that the noncitizen would have rejected the plea if the noncitizen had correctly understood the immigration consequences. (*People v. Espinoza* (2023) 14 Cal.5th 311, 316 (*Espinoza*).)

In making this determination, we consider the totality of the circumstances. (*Espinoza*, *supra*, 14 Cal.5th at p. 320.) Those circumstances include the noncitizen's ties to the United States, the importance the noncitizen placed on avoiding deportation, the noncitizen's priorities in negotiating a plea bargain, and whether the noncitizen had reason to believe an immigration-neutral disposition was available. (*Ibid*.) However, this list is not exhaustive, and no single type of evidence is necessary for relief. (*Id*. at p. 321.) Any assertions by the noncitizen must be corroborated with objective evidence.

(*Ibid*.) Objective evidence can include facts in declarations, contemporaneous documentation of the noncitizen's immigration concerns, and the charges the noncitizen faced. (*Id*. at p. 321.)

We review independently whether noncitizens have demonstrated a reasonable probability they would have rejected a plea offer had they understood its immigration consequences. (*Espinoza*, *supra*, 14 Cal.5th at p. 319.) Where the trial court has based its rulings on a "cold record," or, in other words, only documentary evidence, we need not defer to trial court fact finding. (*Id*. at pp. 319–320.)

We apply these guidelines to this case.

The error Rivera alleges is that he subjectively failed to understand the mandatory immigration consequences his plea would have. Case law establishes that the noncitizen's subjective misunderstanding qualifies as sufficient error under the statute. (*People v. Manzanilla* (2022) 80 Cal.App.5th 891, 909–910 (*Manzanilla*) [focus is on noncitizen's own error in not understanding the plea would subject him to mandatory deportation and permanent exclusion].)

Objective, contemporaneous evidence supports Rivera's assertion. The trial court advised Rivera only that his pleas "could" have immigration consequences. The Supreme Court has held there is a critical difference between being notified the plea may have immigration consequences and being told the plea will make one immediately deportable. (*People v. Vivar* (2021) 11 Cal.5th 510, 523 (*Vivar*) [failure to advise of certain immigration consequences of plea rendered representation constitutionally deficient].) When counsel provides only the first advisement in a situation calling for the second, the advisement is insufficient. (*Id*. at p. 533 [advisement that plea might have adverse

immigration effects insufficient where deportation would be mandatory].)

Here, Rivera was pleading to an aggravated felony, as the prosecution concedes. (*Manzanilla, supra*, 80 Cal.App.5th at pp. 903–904.) Under immigration law, that made him deportable and provided grounds for permanent exclusion. (*Ibid*.) There is no evidence counsel or the trial court advised him of this. The only evidence we have points to the opposite. The trial court's advisement used the improper ambiguous language, and Rivera declared his counsel did not discuss mandatory immigration consequences.

The prosecution argues Rivera's counsel had a duty not to misadvise him, and the presumption is the counsel performed his duty. In 1996, however, Rivera's counsel did not have a duty to discuss mandatory immigration consequences as they would now. That duty arose only with the decision *Padilla v. Kentucky* (2010) 559 U.S. 356. (See *Manzanilla, supra*, 80 Cal.App.5th at p. 905–906 [where immigration consequences clear and virtually certain, after 2010 counsel now must advise client of those consequences].) When counsel had no professional obligation, we cannot infer that counsel in 1996 told Rivera of the mandatory immigration consequences. The lack of any proper advisement in the record corroborates Rivera's claim.

We turn next to whether the error was prejudicial. In making this determination, we consider whether there was a reasonable probability Rivera would have refused the plea if he understood the immigration consequences.

Rivera declares that he did not understand his plea had mandatory immigration consequences, and that, if he had, he would not have accepted the offer. We consider the totality of the

5

circumstances to see if objective evidence corroborates these claims.

The first factor we consider is Rivera's ties to the United States. Rivera came to the United States when he was 16. At the time of his plea, he had lived here for over 20 years. He had worked consistently for the majority of his time here. At the time of the plea, he had been with Ibarra in the United States for nearly 20 years, and they had three United States citizen children together. (They later married and had been together for 46 years at the time of the section 1473.7 motion.) Rivera's mother was a permanent legal resident. His father had passed away. Rivera declared his whole life was in this country, which has been his home since he was 16. Mexico was a foreign country to him.

These ties are sufficient evidence Rivera would have focused on mandatory immigration consequences. (*People v. Alatorre* (2021) 70 Cal.App.5th 747, 771 [deep ties to the United States constitute contemporaneous evidence that avoiding deportation would have been a primary concern].) *People v. Abdelsalam* (2022) 73 Cal.App.5th 654 does not undermine this conclusion. In *Abdelsalam*, the court explicitly told the noncitizen, orally and in writing, he would be deported as a result of his plea. (*Id.* at p. 658, 663.)

The prosecution points out convictions for domestic violence can undermine an assertion that a noncitizen would have prioritized staying for the victim. (*Espinoza, supra*, 14 Cal.5th at p. 323.) While true, the facts here do not support that conclusion. In *People v. Bravo* (2021) 69 Cal.App.5th 1063, the perpetrator had only been with his girlfriend for a year and a half when he attacked her and their infant son. (*Id.* at p. 1068.)

6

Here, while serious, the domestic violence occurred in the context of a relationship that had already lasted about 20 years and that involved three children. That Rivera and Ibarra remained – and remain – together corroborates that these ties to his family would have motivated him.

We next consider the importance Rivera placed on immigration consequences and his priorities in negotiating a plea bargain. In his declaration, Rivera asserts he would not have accepted the plea bargain had he understood the mandatory immigration consequences. He further states his counsel did not discuss the mandatory immigration consequences with him. If he had, Rivera would have asked him to seek an immigration-safe plea. The transcript shows Rivera did focus on avoiding a lengthy prison sentence. This is typical: few prefer long sentences. This fact does not conflict with Rivera's professed desire to avoid mandatory deportation. (Cf. *Vivar*, *supra*, 11 Cal.5th at p. 532 [rejection of immigration-neutral offer did not show failure to value immigration consequences where noncitizen not advised of immigration risk].) The prosecution asserts Rivera declared he did not care about remaining in the United States. This assertion is incorrect. Rivera explicitly stated that, if he understood the mandatory immigration consequences, he would not have accepted the plea, and he would have asked counsel to negotiate an immigration-safe disposition. Although the court can consider Rivera's failure to provide a declaration from his plea counsel, the absence of that declaration is not fatal to Rivera's case, given the rest of the record.

We turn next to whether there was reason for Rivera to believe an immigration-neutral disposition was possible. Here, as Rivera notes, the negotiated disposition was for him to serve

7

367 days. (*Manzanilla*, *supra*, 80 Cal.App.5th at p. 909 [where opening offer was 365 days, reasonable to think reduction to 364 days might be accepted].) As the prosecution notes, this was a very lenient offer. But there is little reason to believe the prosecution would have automatically rejected a 364 day sentence, as the prosecution now urges. The term of 367 days is close to a term of 364 days. The prosecution has not explained why a three-day difference would have been a deal point.

The trial court found Rivera's assertion that he did not understand the immigration consequences was not credible. The court ruled the transcript of the sentencing hearing showed Rivera understood and participated in the proceedings. This inference addresses the wrong issue. When the court said only that immigration consequences "may" occur, it is not enough to ask whether Rivera understood what the court said. (*Bravo*, *supra*, 69 Cal.App.5th at pp. 1073–1074 [advisement given in 1997 insufficient to satisfy section 1473.7].) Rather, the key question is whether Rivera understood the immigration consequences, which here were undisclosed. We do not disagree Rivera appeared to understand the proceedings. But it does not follow that he understood immigration consequences never explained.

The trial court also drew a different problematic inference. It found that Rivera's previous experiences with the criminal justice system undermined his credibility. That experience may prevent Rivera from claiming unfamiliarity with certain aspects of the justice system, but there is no evidence he had previously entered a plea or that he had received a proper immigration advisement in the past. Moreover, despite his previous felony robbery conviction, the United States granted Rivera lawful

8

permanent residency.  This experience would make him less likely to understand the new felony conviction would result in deportation and permanent exclusion.

The trial court found Rivera's motion was untimely.  The prosecution admirably concedes this was error and admits Rivera's motion was timely.  We agree.  (*People v. Perez* (2021) 67 Cal.App.5th 1008, 1016 [where noncitizen is no longer in custody and triggering events in the statute have not occurred, the motion is timely].)

## DISPOSITION

We reverse and remand for the trial court to enter an order granting Rivera's motion pursuant to section 1473.

WILEY, ACTING P. J.

We concur:

VIRAMONTES, J.

SCHERB, J.

9